IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN E. KLUTH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | CIV-15-758-HE |
| v. | ) | |
| | ) | |
| TRACY McCOLLUM, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the convictions and

sentences entered against him in the District Court of Canadian County, Case No. CF-2011-

66, for three counts of Child Abuse (counts one, three, and five) and two counts of Child

Neglect (counts two and four).  Respondent has responded to the Petition and filed the

relevant state court records, including the transcripts of Petitioner's trial (hereinafter "TR__")

and the original record (hereinafter "OR__"). The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the

following reasons, it is recommended that the Petition be denied.

I. Background

The following facts, as found by the Oklahoma Court of Criminal Appeals ("OCCA")

in Petitioner's direct appeal, are relevant:

> John and Sonja Kluth, husband and wife, were jointly accused
> of abusing and neglecting their three minor adoptive children.
> Authorities found evidence of physical abuse and
> malnourishment. On the witness stand, the children chronicled
> a life of harsh discipline, emotional detachment, and general
> neglect. Both of the defendants testified. Consistent with their
> interviews with police, they admitted some of the allegations,
> but claimed the children's severe psychological issues
> contributed to the dysfunctional home environment.

Petition, Ex. 1; Response, Ex. 3 (Kluth v. State, No. F-2012-701 (Okla. Crim. App.

2014)(Summary Opinion)).

In a joint trial conducted on June 11-18, 2012, Petitioner was convicted by a jury of

five counts (counts one through five) and found not guilty on one count (count six). The jury

recommended a ten-year term of imprisonment for each conviction. At sentencing the court

imposed ten year terms of imprisonment on each count, with the sentences in counts one and

two ordered to run consecutively to each other and the sentences in counts three through five

ordered to run concurrently with counts one and two.

Petitioner appealed the convictions and sentences. In eight propositions, Petitioner

asserted (1) an actual conflict of interest deprived him of effective assistance of counsel and

a fair trial; (2) plain and constitutional error occurred when the trial court did not *sua sponte*

sever Petitioner's trial from his wife's trial; (3) Petitioner was denied due process by the

improper admission of rebuttal testimony; (4) Petitioner's convictions violated federal and

state prohibitions against double jeopardy because he was "punished for a single omission

against all three children; i.e., that he failed to protect them from their mother;" (5) errors in

2

the admission of evidence violated Petitioner's right to due process and a fair trial; (6) Petitioner's sentences are excessive; (7) prosecutorial misconduct deprived him of a fair trial; and (8) cumulative error required reversal of his convictions. Response, Ex. 1 (Brief of Appellant), at 41 (ECF page no. 48).

The State opposed each of these grounds. Response, Ex. 2 (Brief of Appellee). In a summary opinion issued February 20, 2014, the OCCA reviewed and rejected each of Petitioner's claims and affirmed the convictions and sentences. Petition, Ex. 1; Response, Ex. 3.

In a post-conviction application filed in the district court, Petitioner asserted that (1) he was denied his Sixth and Fourteenth Amendment rights when the trial judge was allowed to determine whether his sentences were to be served concurrently or consecutively to each other; and (2) he was denied due process when he was not afforded a fair opportunity to dispute the findings in the presentence investigation report.

Petitioner alleged that his appellate counsel provided constitutionally ineffective assistance because he failed to raise these claims in Petitioner's direct appeal. The trial court found Petitioner had procedurally defaulted the claims and that he had not demonstrated ineffective assistance of appellate counsel to excuse his procedural default. Response, Ex. 7. On appeal of this decision, the OCCA affirmed the district court's decision. Response, Ex. 9.

## II. Habeas Claims

In his Petition, Petitioner asserts the following eleven grounds for habeas relief:

● he was denied effective assistance of counsel because of an "actual conflict where his defense interests were materially adverse to his wife's" and he and his wife were represented by the same defense attorney;

● the trial court erred and violated his rights under the Confrontation Clause and to a fair trial by failing to *sua sponte* sever Petitioner's trial from his wife's trial;

● he was denied due process and a fundamentally fair trial due to the admission of improper rebuttal testimony by the prosecution's witness, Ms. Mason;

● his rights under the Double Jeopardy Clause and Okla. Stat. tit. 21, § 11, were violated by his convictions for child abuse and neglect which essentially "punished [him] for one single act" of failing "to protect the children from Ms. Kluth;"

● he was denied due process and a fair trial when the trial court allowed the prosecutor to "inquire[ ] into allegations that Wisconsin authorities had investigated the Kluths for abuse and neglect;"

● Petitioner's aggregate "sentence is excessive" because his "culpability was far less than his co-defendant Ms. Kluth who received life;"

● prosecutorial misconduct denied Petitioner a fair trial when "the prosecutor compared living conditions of the Petitioner's storm shelter to prison and then compared the children's experience to terrorist prisoners being waterboarded;"

● cumulative errors occurred during the trial that require his convictions be reversed or his sentences be modified to run concurrently with each other;

● Petitioner was denied his Sixth and Fourteenth Amendment rights and rights under

Oklahoma law "to have the jury determine sentences as Okla[homa] sentencing scheme is unconstitutional with Judge found facts determing [sic] concurrent or consecutive sentences;"

• Petitioner's due process rights were violated when he was not afforded an opportunity to dispute the factual findings in the presentence investigation report as mandated by Oklahoma statutes, Okla. Stat. tit. 22, §§ 973, 974, 982; and

• Petitioner was denied effective assistance of appellate counsel due to counsel's failure to raise grounds nine and ten above.[1]

Petitioner exhausted these claims by raising them in his direct and post-conviction appeals.

## III. Standard of Review of Constitutional Claims

Under the AEDPA, a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an

_____

[1]This last claim is a generous interpretation of the *pro se* Petition in which Petitioner alleges that his appellate counsel either "missed" or "neglected to raise" on appeal the claims he has asserted in grounds nine and ten of the Petition. Petition, at 23, 25.

unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(per curiam)(citations omitted). See Cullen v. Pinholster, 563 U.S. 170, 181 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

IV. Actual Conflict of Interest

In his first ground, Petitioner contends that he was denied effective assistance of counsel because his defense counsel was acting under an actual conflict of interest by representing both Petitioner and his co-defendant spouse.

The OCCA reviewed the merits of this claim in Petitioner's direct appeal. The court rejected the claim and explained that

> [j]oint representation of co-defendants does not automatically give rise to a conflict of interest. A common defense can be an entirely reasonable strategy. Indeed, we cannot conceive of any other, given the evidence presented here. Both of the Kluths had spoken freely with police, incriminating themselves and each other, early in the investigation. The testimony of the children was extensive, detailed, and mutually corroborating. Both of the Kluths elected to testify, admitting some amount of wrongdoing, but attempting to explain their behavior. Neither professed ignorance of the abuse, and neither blamed the other exclusively; indeed it would have been foolish under these circumstances, as the defendants had already made contrary assertions to police in a non-custodial setting. Because we find no evidence that trial counsel actively represented conflicting interests, [Petitioner] has not established any violation of his right to effective, conflict-free counsel.

Response, Ex. 3, at 2-3 (citing Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980)).

Ineffective assistance claims are analyzed under the now-familiar two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). "First, [Petitioner] must show that counsel's performance was deficient." Id. at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." Id. at 687, 688. There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." Id. at 689.

With respect to the second prong of the analysis, Petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694. "In making this determination, a court

hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695.

An exception to the two-prong analysis required by Strickland applies when a litigant can demonstrate an "actual conflict of interest" occurred. Id. at 692. Petitioner contends that such a conflict of interest occurred when his defense attorney represented both Petitioner and Ms. Kluth.

"[M]ultiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest." Cuyler, 446 U.S. at 348. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate than an actual conflict of interest adversely affected his lawyer's performance." Id. When a defendant shows that a conflict of interest actually affected the adequacy of his counsel's representation, the defendant "need not demonstrate prejudice in order to obtain relief." Id. at 349-50.

"An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client." United States v. Alvarez, 137 F.3d 1249, 1252 (10th Cir. 1998). "[T]o demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." Id. (internal quotation omitted). A mere possibility or suggestion of a conflict is not sufficient. Cuyler, 446 U.S. at 350.

In his direct appeal, Petitioner argued that the evidence at trial showed his co-defendant spouse was primarily responsible for injuring their children. Response, Ex. 1, at

8

23-24 (ECF 30-31) (citing specific instances in the record). Petitioner argued that his defense was "materially adverse" to his wife's because of the "practically non-existent" evidence in the record showing Petitioner used "such unusual force on the children." Id. at 24 (ECF 31).

However, this argument misreads the record which evidences multiple instances in which Petitioner and his co-defendant spouse acted jointly in abusing and neglecting their children. It also ignores Petitioner's own admissions of culpability appearing in the record.[2] As the OCCA found, neither Petitioner nor his co-defendant spouse professed ignorance of the abuse or tried to blame the other exclusively for the abuse, and the children's testimony revealed that both parents were culpable for gross instances of abuse and neglect.

Petitioner has not shown that the OCCA's resolution of his claim that his defense attorney acted under an actual conflict of interest was contrary to or unreasonably applied the governing Cuyler standard. Therefore, Petitioner is not entitled to habeas relief as to this claim.

## V. Severance

In his second ground, Petitioner contends that the trial court erred and violated his

---

[2]Petitioner admitted slapping the children or hitting them on the shoulder or the back of their head, spanking them, feeding the older two children dog food, put the oldest child in a dog crate as discipline, and forcing the older two children to sleep in an unlit, locked storm shelter with only a bucket for their waste for five months. He denied seeing the bruises, scars, and injuries to the children's bodies that were apparent on the photographs admitted into evidence and taken after they were removed from Petitioner's and his wife's custody. Petitioner admitted that "the spankings" and "the slaps" got out of control and "the whole situation . . . was out of control." TR vol. VI, at 216, 220. Petitioner admitted throwing the oldest child to the ground and calling the children "losers." TR vol. VI, at 221-22.

right to a fair trial by failing to *sua sponte* sever his trial from that of his co-defendant spouse.

On appeal, Petitioner argued that his right of confrontation was "impaired" because his defense attorney could not effectively cross-examine Petitioner's co-defendant, thereby rendering his co-defendant "unavailable" under <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

"Generally, severance is a question of state law not cognizable in federal habeas proceedings. There is no constitutional right to severance without a strong showing of prejudice caused by the joint trial. Severance is not constitutionally required merely because defense theories conflict or because one defendant is attempting to cast blame on another. Rather, a petitioner must show 'real prejudice.'" <u>Carter v. Gibson</u>, 27 Fed. App'x. 934, 948 (10th Cir. 2001)(unpublished op.)(internal citations omitted).

Under Oklahoma law, "[i]f it appears that a defendant or the state is prejudiced by joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide whatever other relief justice requires." Okla. Stat. tit. 22, § 439. As the OCCA stated in its decision in Petitioner's direct appeal, the question of severance in Oklahoma generally depends on whether two defendants have "mutually antagonistic defenses." <u>Ochoa v. State</u>, 963 P.2d 583, 595 (Okla. Crim. App. 1998)(citing <u>Cannon v. State</u>, 827 P.2d 1339, 1341 (Okla. Crim. App. 1992); <u>Lafevers v. State</u>, 819 P.2d 1362, 1364 (Okla. Crim. App. 1991)). "To be considered 'mutually antagonistic,' the two theories of defense must be in direct contravention and the parties must each place blame with the co-

defendant." <u>Id.</u>

Defenses are not mutually antagonistic "unless each is a complete defense to guilt."

<u>Spunaugle v. State</u>, 946 P.2d 246, 251 (Okla. Crim. App. 1997). As the OCCA pointed out,

"[s]everance is also required [in Oklahoma] when the State introduces the confession of a

non-testifying co-defendant which inculpates another co-defendant." <u>Id.</u>

In Petitioner's direct appeal, the OCCA rejected Petitioner's claim, explaining:

> As to Proposition 2, severance of co-defendants' trials is warranted when their strategies are "mutually antagonistic," or when the State plans to introduce one non-testifying defendant's statements that happen to incriminate the other defendant as well (which would pose a Confrontation Clause problem for the second defendant). *See Plantz v. State*, 1994 OK CR 33, ¶ 7, 876 P.2d 268, 273; *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). None of these concerns were present in this case. As explained in Proposition 1, the defendants employed a common defense. [Petitioner] offers no practical benefit that severance would have produced. Proposition 2 is denied.

Response, Ex. 3, at 3-4.

Considering the record in this case, Petitioner has not shown "real prejudice" as a

result of his joint trial. In their pre-trial statements to a child welfare worker and to law

enforcement and in their trial testimony, Petitioner and his co-defendant spouse both

implicated the other in the abuse and neglect of their three adopted children while also

implicating themselves and attempting to explain their behavior by blaming their children.[3]

---

[3]The Department of Human Services ("DHS") child welfare worker testified that when she went to Petitioner's and his wife's home to remove the middle and youngest child from the home, the middle child had a black eye and the youngest child had a ripped earlobe and chipped tooth. She

The Kluths admitted during the trial that many of their decisions concerning disciplining their children, including putting the children in a dog crate, forcing the children to stack concrete blocks, placing the children in a locked storm shelter, and requiring the children to ask permission to use the bathroom, were joint decisions.

During his testimony, Petitioner testified that he was unaware of some of the punishment imposed on the children by his wife during the daytime while he was at work, but he blamed the oldest child's misbehavior for the disciplinary measures. In this circuit, "a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against [himself]." United States v. Wardell, 592 F.3d 1279, 1300 (10th Cir. 2009)(internal quotation omitted). Petitioner has not shown

_____

testified Petitioner's wife admitted punching the middle child in the eye. Petitioner's wife admitted during a conversation with the DHS worker that "she was a monster and a criminal and d[id] not deserve to have the kids." TR vol. IV, at 169. Petitioner's wife also stated that "there would be some thing that would never come out" in the investigation. TR vol. IV, at 171. The DHS worker testified that the youngest child was limping when she was removed from the home. TR vol. IV, at 184. A law enforcement officer testified that during an initial investigation Petitioner admitted to the officer that the discipline imposed by him and his wife on the children had "become physical" and that "their anger" had gotten "out of control." TR vol. IV, at 228-29. Petitioner admitted to the officer that both he and his wife were spanking the children excessively, that the spanking had caused "marks; especially when they used a belt and kids moved," and the children were sent "to the cellar for punishment time." TR vol. IV, at 230. Petitioner also admitted to the officer that his wife had "hit one of the kids with a spoon and a can opener" and that he and his wife had argued "because they got way out of control." TR vol. IV, at 231. Petitioner also admitted to the officer that the two older male children were locked in a cellar every night with two buckets, chairs, and warm clothing if they needed it. TR vol. IV, at 232. Petitioner admitted the oldest child had been sent to the cellar before he ran away. According to the testimony of an employee of the restaurant where the child was found early in the morning on a cold November day in 2010, he was found hiding in a box in a dumpster area outside of the restaurant. TR vol. II, at 17-19. The boy was wearing jeans, a t-shirt, and tennis shoes. TR vol. II, at 21. He denied that he had any parents, and he had "old bruising" on his face and his arms. TR vol. II, at 22. The worker testified it was obvious he had been "beat up." Id. An investigating officer testified that the oldest child was "terrified" that he would be returned home and that he had bruising all over his front and back. TR vol. II, at 31.

that the OCCA's rejection of this claim was contrary to or unreasonably applied clearly-established Supreme Court authority.  Therefore, Petitioner is not entitled to habeas relief as to this claim.

VI.  Admission of Rebuttal Testimony

In his next ground, Petitioner asserts that the trial court erred and denied him a fair trial by allowing rebuttal testimony from a prosecution witness, Ms. Mason.  In Petitioner's direct appeal, the OCCA rejected this claim and found that "the trial court did not abuse its discretion in allowing the State to call, as a rebuttal witness, one of the children's current foster mother.  The witness properly rebutted character traits of that child, which were placed in issue by the defense." Response, Ex. 3, at 4 (citing Okla. Stat. tit. 12, § 2404(A)(2), and Davis v. State, 103 P.3d 70, 76 (Okla. Crim. App. 2004)).

It is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. *E.g.*, Mabry v. Johnson, 467 U.S. 504, 507 (1984); Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 221 (1982); Brinlee v. Crisp, 608 F.2d 839, 843 (10th Cir. 1979).  In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith, 455 U.S. at 221.

In considering a challenge to a state court's admission of evidence, "[t]he question presented in [the habeas proceeding] is not whether th[e] evidence was admissible under state law, but instead whether, considered in light of the entire record, its admission resulted in a

fundamentally unfair trial." <u>Knighton v. Mullin</u>, 293 F.3d 1165, 1171 (10th Cir. 2002).  The only question for habeas review is whether "the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." <u>Id.</u> (internal quotation omitted).

During the trial, after Petitioner's wife and Petitioner testified and the defense rested, the prosecutor called a rebuttal witness, Ms. Mason, who was at that time and had been for the previous eight months the foster parent for the Kluths' oldest child. TR vol. VI, at 228, 241.  The prosecutor offered the testimony under a provision of Oklahoma's evidence code, Okla. Stat. tit. 12, § 2404(A)(2), as rebuttal evidence concerning the character traits of the child.  TR vol. VI, at 231.  The defense objected to the admission of Ms. Mason's testimony on the basis of relevance. TR vol. VI, at 229-231.  The defense also complained that Ms. Mason had been seated in the courtroom during the trial in violation of the rule of sequestration.  The trial court overruled the objection. TR vol. VI, at 232.

The prosecutor questioned the witness concerning the child's behavior at home and at school during the time that she had fostered the child.  At the conclusion of her testimony, the defense moved for a mistrial, and the motion was denied. TR vol. VI, at 239-240.  Petitioner's defense attorney then cross-examined the witness.

Under Okla. Stat. tit. 12, § 2404(a)(2), a defendant may offer evidence of a pertinent character trait or traits of the victim to "rebut the same."  The character of the Kluth's oldest adopted child was certainly at issue in Petitioner's trial.  Petitioner and his wife testified that they imposed disciplinary measures on the children, including forcing the two older children

to sleep in a locked storm shelter, in large part because of the oldest child's misbehavior. Petitioner has not demonstrated that his trial was rendered fundamentally unfair as a result of the admission of the rebuttal testimony or that the OCCA's rejection of this claim was contrary to or an unreasonable application of clearly established Supreme Court authority. Petitioner is not entitled to habeas relief concerning this claim.

## VII. Double Jeopardy

Petitioner next contends that his rights under the Double Jeopardy Clause and Okla. Stat. tit. 21, § 11, were violated by his convictions for child abuse and neglect which essentially "punished [him] for one single act" of failing "to protect the children from Ms. Kluth."

In Petitioner's direct appeal, the OCCA made the following findings and conclusions concerning the same double jeopardy claim:

> As to Proposition 4, [Petitioner] was charged with one count of Child Abuse and one count of Child Neglect as to each child. The information alleged that [Petitioner] abused each child by using unreasonable force against them, and by failing to protect them from additional physical abuse at the hands of Mrs. Kluth. The Information alleged that [Petitioner] neglected each child by failing to provide them with proper food, clothing, shelter, sanitation, and medical attention. [Petitioner's] claim that the two theories depended on the same evidence is meritless. The Child Neglect theories had nothing to do with committing or permitting physical abuse, but rather, with [Petitioner's] willful disregard for the children's well-being in other ways. The Abuse and Neglect allegations were legally distinct offenses, and they were independently supported by evidence. Because [Petitioner] raises this claim for the first time on appeal, re review only for plain error, and find none. Proposition 4 is denied.

Response, Ex. 3, at 4-5 (footnote and citations omitted).

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, "consist[s] of three separate constitutional protections," including "protect[ion] against a second prosecution for the same offense after acquittal," "protect[ion] against a second prosecution for the same offense after conviction," and "protect[ion] against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

Petitioner's claim is directed to the Clause's protection against "multiple punishments." This provision "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." Ohio v. Johnson, 467 U.S. 493, 499 (1984). Consequently, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Id.

The OCCA clearly expressed its conclusion that the Oklahoma legislature, consistent with the Oklahoma Constitution and Okla. Stat. tit. 21, §11, intended to allow Petitioner's convictions for five of the six charged offenses.[4] This conclusion is not subject to habeas review. Estelle v. McGuire, 502 U.S. 62, 68 (1991)(recognizing that federal habeas courts have no authority to reexamine state court interpretations of state laws).

Where legislative intent is clear, the test established in Blockburger v. United States, 284 U.S. 299 (1932), is applied to determine whether the Double Jeopardy Clause of the

_____

[4]As the OCCA noted in its decision, Petitioner was acquitted of one of the three Child Neglect counts.

Constitution has been violated. Under Blockburger, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. See Davis v. State, 993 P.2d 124, 125 n. 1 (Okla. Crim. App. 1999)("In cases of multiple punishment in a single trial, this court utilizes the 'same evidence' test (whether each offense contains an element not contained in the other).").

In identifying the elements of the relevant offenses for the purpose of the Blockburger analysis, courts look to the statutes governing the offenses. In this case, Oklahoma's child abuse and child neglect statutes require separate and distinct elements. Okla. Stat. tit. 21, §843.5(A) (child abuse); Okla. Stat. tit. 21, § 843.5(c) (child neglect). Child abuse, under the statute, requires evidence of "the causing, procuring or permitting of a willful or malicious act of harm or threatened harm or failure to protect from harm or threatened harm to the health, safety, or welfare of a child under eighteen (18) years of age by another." Okla. Stat. tit. 21, § 843.5(A). Child neglect, under the statute, requires proof of "willful or malicious neglect, as defined by paragraph 47 of Section 1-1-2015 of Title 10A of the Oklahoma Statutes, of a child under eighteen (18) years of age by another." Okla. Stat. tit. 21, § 843.5(C). Neglect is defined as a failure to provide "adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, or appropriate education," or a failure to provide "medical, dental, or behavioral health care." Okla. Stat. tit. 10A, § 1-1-105. Neglect does not involve willful or malicious harm or threatened harm to a child. The OCCA concluded that each of these statutes requires proof of an element that the other does not, and the statutes

17

support this conclusion. Petitioner has not shown that the OCCA's rejection of this claim was contrary to or unreasonably applied the Blockburger standard. Petitioner is not entitled to habeas relief concerning this claim.

VIII. Admission of Evidence

Petitioner contends that he was denied due process and a fair trial when the trial court allowed the prosecutor to "inquire[ ] into allegations that Wisconsin authorities had investigated the Kluths for abuse and neglect." Petition, at 15. Asserting the same argument he made in his direct appeal, Petitioner argues that any probative value in this questioning was outweighed by unfair prejudice because the questioning "produced a powerful unfair inference the Kluth's [sic] were abusing the children in another state." Id. Petitioner asserted in his appeal that the questioning impermissibly injected evidence of "other crimes" into the trial, even though there was no truth to the allegations.

The OCCA rejected this claim, finding that "the prosecutor's inquiry, on cross-examination of [Petitioner], regarding a prior investigation for possible child abuse or neglect in another state, did not improperly inject 'other crimes' evidence. [Petitioner] opened the door to the inquiry in his direct testimony, and when the prosecutor inquired about the investigation, [Petitioner] explained to the jury that no adverse findings were made. . . . In fact, the subject had already been explored in more detail during the testimony of the co-defendant." Response, Ex. 3, at 5.

Petitioner's argument in his appeal and the OCCA's decision were based entirely on state evidentiary law. But, as previously stated, "federal habeas relief does not lie for errors

of state law." Estelle v. McQuire, 502 U.S. 62, 67 (1991).  See Thomas v. Gibson, 218 F.3d 1213, 1222 (10th Cir. 2000)("§ 2254 exists to correct violations of the United States Constitution, not errors of state law.").  Habeas relief is warranted for state law errors only when "the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law." Knighton, 298 F.3d at 1171.

During cross-examination of Petitioner at his trial, the prosecutor asked the following: "And I don't think it was made clear this morning with your wife, but at some point the Department of Human Services [in Wisconsin] investigates you and your wife for alleged abuse and neglect of the children?" TR vol. VI, at 205.  Petitioner responded, "Yes," and upon further questioning concerning this investigation stated that the allegations of abuse and neglect were found to be "unsubstantiated." TR vol. VI, at 205-206.  Petitioner's defense counsel then moved for a mistrial, which the trial court denied.

Petitioner can show no prejudice resulting from the prosecutor's questioning in light of the circumstances (the issue had already been addressed by his co-defendant) and Petitioner's own testimony.  Petitioner has not shown that the OCCA's resolution of this claim was contrary to or an unreasonably application of clearly-established Supreme Court jurisprudence.  Accordingly, Petitioner is not entitled to habeas relief with respect to this claim.

IX. Sentencing Issues

Petitioner asserts in his sixth ground that his aggregate twenty-year sentence was

excessive because he was "far less" culpable than his co-defendant and the jury recommended ten-year sentences be imposed for each offense. The OCCA gave short shrift to Petitioner's excessive-sentence claim in resolving his direct appeal. The OCCA concluded that "the jury's recommendation of ten years imprisonment on each of the five counts, and the trial court's aggregation of the sentences to a cumulative term of twenty years, did not result in a shockingly excessive sentence, given the evidence presented at trial." Response, Ex. 3, at 5-6.

"A gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). "[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003). In considering the proportionality of a sentence, a state trial court's sentencing decision is accorded "wide discretion," and "challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000).

The maximum punishment for the offenses of child abuse and child neglect in Oklahoma is life imprisonment. Okla. Stat. tit. 21, §§ 843.5(A), 843.5(C). Thus, Petitioner's ten-year sentences for each of his five convictions were well within the range of punishment for the offenses. In Oklahoma, the sentencing judge has the authority to determine whether multiple sentences run concurrently or consecutively. Okla. Stat. tit. 22, § 976. Petitioner has not pointed to any Supreme Court decision, let alone any other decision, holding that the

Constitution requires multiple sentences be served concurrently. Petitioner has not demonstrated that the OCCA's decision was contrary to or unreasonably applied controlling Supreme Court authority.

In his ninth ground, Petitioner asserts that Oklahoma's "sentencing scheme is unconstitutional" because the trial court has the authority to determine whether a convicted defendant's sentences run consecutively or concurrently. In ground ten, Petitioner contends that he was denied due process because he was not given the opportunity to dispute the "factual findings" set forth in the presentence investigation report in violation of state law.

The OCCA found that these claims were procedurally barred from review due to Petitioner's failure to assert the claims in his direct appeal. Response, Ex. 9, at 2-3. Oklahoma's procedural bar rule prohibits review of claims raised for the first time in post-conviction proceedings that could have been raised on direct appeal. Okla. Stat. tit. 22, §1086.

OCCA's application of its procedural bar rule is an independent and adequate state ground for the court's decision. Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002). In a habeas proceeding such as this one, the Court will not consider issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for default and resulting prejudice or, alternatively, a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991).

In its decision, the OCCA also affirmed the district court's finding that Petitioner had not shown he was denied effective assistance of appellate counsel, which he claimed excused

his procedural default. In reaching this conclusion, the OCCA affirmed the district court's findings that Petitioner's post-conviction application lacked specific allegations to demonstrate either that his counsel's representation fell below an objective standard of reasonableness or that his counsel's failure to raise the defaulted claims would have resulted in a different result in Petitioner's appeal. The OCCA recognized that it had previously held that "a post-conviction application that is lacking in these specifics will be insufficient to prove a claim of ineffective assistance of appellate counsel." Id. at 3 (quoting Logan v. State, 293 P.3d 969, 978-79 (Okla. Crim. App. 2013)).

"Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." Hickman v. Spears, 160 F.3d 1269, 1272 (10th Cir. 1998). Under Strickland v. Washington, 466 U.S. 668 (1984). a petitioner must show that his or her attorney's representation fell below an objective standard of reasonableness and that the appellate counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687. "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.

Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim . .. to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." <u>Banks v. Reynolds</u>, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983)). "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1321 (10th Cir. 1998). If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999).

Petitioner has merely alleged that his appellate counsel "missed" or "neglected to raise" the procedurally-defaulted claims asserted in grounds nine and ten. Petitioner has not asserted a cogent argument supporting a claim of ineffective assistance of appellate counsel. To the extent the Petition can be generously construed to assert such a constitutional claim, Petitioner has not demonstrated that the OCCA's rejection of the claim was contrary to or unreasonably applied the Supreme Court's governing standard set forth in <u>Strickland</u>. Petitioner has not shown cause for his state-court procedural default of the sentencing issues asserted in grounds nine and ten, and he has not alleged a miscarriage of justice would result from this Court's failure to review the merits of his defaulted claims. Petitioner is therefore not entitled to habeas relief concerning these claims.

X. <u>Prosecutorial Misconduct</u>

In his seventh ground for habeas relief, Petitioner urges that prosecutorial misconduct operated to deny him a fair trial when "the prosecutor compared living conditions of the Petitioner's storm shelter to prison and then compared the children's experience to terrorist prisoners being waterboarded." Petition, at 19.

During closing argument, the prosecutor argued that the conditions of the shelter at Petitioner's and his wife's residence, as described by their children and Petitioner and his wife, were "worse" than conditions in a prison. TR vol. VI, at 271-272. The prosecutor argued "[i]nmates are given bedding, inmates are given a blanket or a pillow to lay their head on. They're not forced to sit in a plastic chair and spend the night. Inmates are given water. Inmates are allowed to go to the bathroom and flush down their waste. They're not forced to live and spend the night having to smell the odor of their fresh waste in a bucket. But that's what these two boys had to do, and both of these defendants admitted that that's what they made them do. And in their mind, that was okay. There is nothing that justifies that kind of treatment. Prisoners are afforded better treatment than that. Prisoners of war are afforded better treatment than that." TR vol. VI, at 271-272.

The prosecutor then described the debate during the last presidential campaign concerning "what is acceptable use of force and treatment of prisoners, people that are terrorists, people that are out to kill us. And there was a debate about whether you could water board, make people think that you were going to drown them. I would say more people than not thought that that was abusive treatment even for a terrorist that was trying

24

to kill us." TR vol. VI, at 272.

In this claim, Petitioner does not allege that the prosecutor's argument directly affected a specific constitutional right. Under these circumstances, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)). This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005).

The evidence at trial showed that Petitioner and his spouse disciplined their children by making them sleep in a locked storm shelter. The oldest two children, both males, testified that they were forced to sleep in the storm shelter for several months. The youngest child, a female, testified she was forced to go to the shelter on one occasion and put in a dog crate on two occasions. Petitioner admitted putting the boys in the storm shelter for five months and blamed it on the boys' misbehavior.

One of the boys testified that he and his brother were given dog food to eat in the storm shelter. They were provided only two chairs and a bucket, some toilet paper, no light, and a blanket in the winter. TR vol. III, at 85-86. They were forced to go to the bathroom in the uncovered bucket, and they could clean the bucket only once a week. TR vol. III, at 87. They were not provided water while they were in the shelter, and there was no way for them to alert their parents for help. TR vol. III, at 88. They were forced to sleep on the chairs, huddled under a blanket, and the shelter was not heated or cooled. TR vol. III,

at 89-91.

In light of the consistent testimony of the children during the trial, and Petitioner's and his co-defendants' admissions, concerning the horrible conditions in the storm shelter which the older boys were forced to endure for months, the prosecutor's comments during closing argument did not render Petitioner's trial fundamentally unfair. The prosecutor fairly and accurately described the conditions in the storm shelter and other punishment that the children testified they endured. Petitioner has not demonstrated that the OCCA's resolution of his claim of prosecutorial misconduct was contrary to or unreasonably applied the governing Supreme Court standard. Petitioner is not entitled to habeas relief concerning this claim.

XI. Cumulative Errors

Lastly, Petitioner asserts that cumulative errors occurring during his trial warrant habeas relief. The Tenth Circuit Court of Appeals has explained that the doctrine of cumulative errors means "that prejudice can be accumulated *disjunctively* - that all a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Grant v. Trammell, 727 F.3d 1006, 1026 (10th Cir. 2013).

"In the federal habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis ... undertake[n] only if there are at least two errors." Fairchild v. Trammell, 784 F.3d

702, 724 (10th Cir. 2015)(quoting <u>Lott v. Trammell</u>, 705 F.3d 1167, 1223 (10th Cir. 2013)). <u>See</u> <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998)(cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

In this case, there are no errors of a constitutional magnitude to be considered under a cumulative-error analysis. Therefore, Petitioner has not demonstrated that the OCCA's rejection of this same claim was contrary to or an unreasonable application of clearly-established Supreme Court authority. Petitioner is not entitled to habeas relief concerning this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____ January 27th, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not

specifically addressed herein is denied.

ENTERED this   7th   day of    January   , 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE